S. LANE TUCKER
United States Attorney

SETH BRICKEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: seth.brickey-smith@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | No. 3:23-cr-00039-TMB-KFR |
|---|---|
| Plaintiff, | |
| vs. | |
| MICHAEL ANTHONY ROBERTS, | |
| Defendant. | |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION** ........................................................................................**36 MONTHS**
**SUPERVISED RELEASE** ..........................................................................**1 YEAR**
**SPECIAL ASSESSMENT**..................................................................................**$100**
**RESTITUTION** ..............................................................................................**$1,000**
**FINE**..................................................................................................................**N/A**

The defendant, Michael Anthony Roberts, is a scofflaw and literal flight risk. For well over a decade, he has ignored rules and regulations that are intended to keep Alaskan airways safe. In 2010, he was convicted in state court of three counts of operating an aircraft

without a license or permit. The following year, despite a court order not to fly without a license, he was convicted of eight more counts of operating an aircraft without a license or permit. The defendant also has no less than seven convictions for driving with a suspended, revoked, or cancelled license; multiple convictions for driving while intoxicated; one conviction for guiding without a license; and numerous convictions for other wildlife offenses. He has twice led Alaska law enforcement on extended manhunts. The defendant's disregard for the law is well known. He has earned the reputation as an outlaw and the public moniker "Alaska celebrity wildlife fugitive."[1]

In this case, one of the defendant's violations of the law came to an abrupt end when he crashed his Piper PA-18 Super Cub into a hangar home at Wolf Lake Airport near Wasilla, Alaska. Unsurprisingly, the defendant did not have a valid license to operate an aircraft. Moreover, the defendant's aircraft was illegally modified with parts that were not permitted under FAA regulations and misleadingly marked as an "experimental" aircraft to conceal these violations. The sentence imposed in this case needs to (1) provide adequate punishment and deterrence for a defendant who thus far has thumbed his nose at law enforcement, state courts, and any requirement that he obtain a license of any kind; and (2) send a clear message to the aviation community in Alaska that flouting aircraft safety regulations will not be tolerated. The defendant has received enough second, third, and

---

[1] *See* Craig Medred, *Wanted: Alaska celebrity wildlife fugitive again on the run*, ANCHORAGE DAILY NEWS, Oct. 9, 2012, https://www.adn.com/adventure/article/wanted-alaska-celebrity-wildlife-fugitive-again-run/2012/10/09/ (updated July 6, 2016).

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR          Page 2 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 2 of 12

fourth chances. Nothing less than the maximum sentence in this case will achieve the goals of sentencing.

**FACTS**



**Image 1. The Scene of the Defendant's Crash on February 27, 2022**

//

//

//

//

//

//

//

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR        Page 3 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 3 of 12



**Image 2. The Scene of the Defendant's Crash on February 27, 2022**

//

//

//

//

//

//

//

//

//

//

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR    Page 4 of 12

On February 27, 2022, the defendant attempted to take off from Wolf Lake Airport in his Piper PA-18 Super Cub (N99640). This aircraft was certificated in the Normal Category with a Standard Airworthiness Certificate, which allow only certain parts and modifications on the aircraft pursuant to FAA regulation. But the defendant had installed several aircraft components on N99640 that were not permitted for a PA-18 series Normal Category aircraft with a Standard Airworthiness Certificate, including Shock Monster landing gear shock absorbers, a Caffo 90" propellor, a Javron Angle of Incidence Kit, extended flaps of unknown manufacture, and a Lycoming 0-360-41A 180 HP Engine. To conceal these prohibited alterations, the defendant knowingly and willfully displayed placarding on the starboard window of N99640 that read "EXPERIMENTAL" in 2-inch black letters, falsely indicating N99640 was registered as an experimental category aircraft.

The defendant told law enforcement that he bought the aircraft with significant damage and installed the engine, fuel selector valve, propeller, leading edge slats, shocks, and Javron angle of incidence kit, all of which are maintenance actions he was not qualified to complete pursuant to 14 CFR §§ 43.3 and 91.403–405 because he is not a FAA-certificated mechanic. Moreover, despite the previous damage and significant alterations, the defendant did not have the aircraft inspected by a person authorized to do so in violation of 14 CFR § 91.407.

Notably, one of the defendant's modification jobs was particularly shoddy. When the defendant installed the fuel-selector switch, the part that allows the pilot to choose which tank is feeding fuel to the engine, he mislabeled every one of the switch's positions. What the defendant had hand-labeled "Both" was actually Right, the position labeled

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR        Page 5 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 5 of 12

"Left" was actually Off, the position labeled "Right" was actually Left, and the position labeled "Off" was actually Both. As a result, if a pilot switched the fuel selector switch to "Left" intending to draw fuel from the tank in the left wing, he would unwittingly have cut off the fuel supply to the engine.

**Image 3. The Defendant's Fuel Selector Switch Panel**

The defendant piloted N99640 until it crashed into a building near the Wolf Lake Airport runway shortly after takeoff, destroying the aircraft and causing damage to the building. At the time, the defendant knew that he did not have an airman's certificate issued to him by the FAA that authorized him to pilot N99640. The defendant knew that without an airman's certificate, he could not lawfully pilot N99640. Nevertheless, the defendant knowingly and willfully piloted N99640 without an airman's certificate.

//

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR            Page 6 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 6 of 12

On April 21, 2023, a federal grand jury charged the defendant in a two-count indictment, charging one count of serving as an airman without a pilot certificate, in violation of 49 U.S.C. § 46306(b)(7), and one count of displaying false or misleading marks about the registration of an aircraft, in violation of 49 U.S.C. § 46306(b)(3). On May 3, 2023, law enforcement arrested the defendant on the federal arrest warrant in Wasilla, Alaska. The defendant was the driver and sole occupant of a vehicle registered to another person. Inside the vehicle, in plain view, the defendant possessed two firearms: a Savage 24V Series B 20 gauge/30.30 cal. combination rifle, and a Ruger Ar-556. Both firearms were loaded. The Savage 24V was in the front passenger seat with the hammer drawn back. The defendant is prohibited under federal law from possessing firearms due to a prior felony conviction: Criminal Mischief in the Third Degree, in violation of 11.46.482(a)(1).

## GUIDELINES CALCULATION

Regarding sentencing, the Supreme Court states, "the Guidelines should be the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.*, 552 U.S. 38, 52 (2007). This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR    Page 7 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 7 of 12

The presentence report correctly calculates the defendant's total offense level as 12. The defendant objects to the application of an enhancement pursuant to U.S.S.G. § 2B1.1(b)(16). That provision provides: "If the offense involved (A) the conscious or reckless risk of death or serious bodily injury . . . increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14." The defendant did not merely fly an aircraft without a license. He attempted to fly an aircraft that he (1) had illegally modified with unapproved parts, (2) failed to have inspected by a qualified FAA inspector after rebuilding it, *and* (3) was not licensed to operate. Moreover, he put far more than himself at risk. Having taken off from Wolf Lake Airport, an airport surrounded by hangars and residences, the defendant's decision to fly his illegally modified, uninspected plane threatened the lives and homes of those living nearby. Indeed, he crashed into one such hangar home.

The defendant's objection analogizes flying without a license to driving without a license. But that analogy falls short here. Aircraft accidents involve a much higher degree of risk than car accidents. According to the NTSB, in 2021, 320 out of 1,518 (21.1%) aviation accidents were fatal.[2] In contrast, that same year only 0.65% of car accidents were fatal.[3] These facts highlight that the dangers involved with a poorly operated or maintained aircraft are far more likely to be deadly than a car. It is for this reason that the regulatory

---

[2] NTSB, Monthly Aviation Dashboard available at
https://www.ntsb.gov/safety/data/Pages/monthly-dashboard.aspx
[3] National Highway Traffic Safety Administration (NHTSA), Overview of Motor Vehicle Traffic Crashes in 2021, available at
https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/813435

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR          Page 8 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 8 of 12

and licensing regime for aircraft is more demanding than that for motor vehicles. By circumventing these important safety measures the defendant took a significant and unjustifiable risk with his own life and the lives of others. Accordingly, the Court should apply the enhancement pursuant to U.S.S.G. § 2B1.1(b)(16).

## STATUTORY CRITERIA AND RECOMMENDED SENTENCE

**1. Nature, circumstances, and seriousness of the offense**

This offense is serious. The defendant unlawfully operated an aircraft without an aircraft. Even if he had a license, the aircraft itself was unlawfully modified and had not been certified as airworthy by a qualified inspector. FAA regulations are designed to ensure that aircraft are being operated under the supervision of trained, qualified pilots. Moreover, the regulation of the aircraft themselves ensure that only safe and airworthy aircraft are permitted to fly over Alaska's neighborhoods, cities, and cherished landscapes. The importance of these regulations is proven by this case. Here, while violating numerous regulations, the defendant crashed his aircraft into a nearby hanger home causing damage to the home and destroying the aircraft. The defendant is fortunate that neither he nor anyone else died because of his conduct. This factor weighs heavily in favor of imposing 36 months' imprisonment.

**2. History and characteristics of the defendant**

This is far from the first time that the defendant has flouted aircraft safety regulations. He has 11 prior state convictions for operating an aircraft without a license. Additionally, the defendant's criminal history shows a pattern on lawlessness stretching back to 1990. Though taken individually, many of the defendant's convictions are for petty

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR    Page 9 of 12
Case 3:23-cr-00039-TMB-KFR    Document 88    Filed 07/31/24    Page 9 of 12

crimes and misdemeanors but, taken together, they demonstrate that he has little regard for the rule of law, private property, or orders imposed on him by courts. The Court can therefore have no confidence that the defendant will deviate from 30 years of behavior and abide by any of the conditions of release the Court would impose.

In 2012, the defendant was incarcerated on state misdemeanor charges. He was granted bail and released to a third-party custodian. The state court also imposed a condition that he wear an ankle monitor. Because the defendant was determined to be a high flight risk, the company responsible for his location monitoring required that he post a $3000 security deposit. Nevertheless, the defendant cut his ankle monitor while his third-party custodian slept. These facts are recounted by the Alaska Court of Appeals decision in *Roberts v. State of Alaska*, Case No. A-11923, 2018 WL 1225086 (Alaska Ct. App. Mar. 7, 2018). He then evaded law enforcement for six days until he was apprehended. *See* Craig Medred, *Wanted: Alaska celebrity wildlife fugitive again on the run*, ANCHORAGE DAILY NEWS, Oct. 9, 2012.[4] This was not the only time the defendant fled. In 1999, the defendant fled the Alaska State Troopers who sought to arrest him on numerous wildlife violations, driving under the influence, assault, forgery, and driving without a license. In that instance, he remained a fugitive for weeks.

### 3. Adequate deterrence

No sentence that this Court can impose will ensure that the defendant will refrain from flying without a license. His history of similar violations has made it clear that he will

---

[4] https://www.adn.com/adventure/article/wanted-alaska-celebrity-wildlife-fugitive-again-run/2012/10/09/ (updated July 6, 2016).

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR            Page 10 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 10 of 12

not be specifically deterred. The only way to reasonably ensure the defendant stays out of the cockpit, is to incarcerate him. Several courts have already attempted to deter the defendant from further violations. But each time, the defendant has ignored the law and court orders, persisting in his unlawful behavior.

The Court should consider the unique effect of general deterrence in this case. The aviation community in Alaska is tight-knit, and the defendant is a well-known figure within that community. To show the defendant leniency would send the wrong message to his associates and those who are familiar with his long history of violations. However, if the defendant were to receive the maximum sentence, it would likely deter others from skirting FAA regulations. This factor weighs in favor of a 36-month sentence.

**4. Protection of the public from further crimes**

The defendant's well-documented criminal history involving reckless behavior in aircraft and other vehicles, the defendant poses a risk of danger to the community. The defendant has made it clear that no conviction or condition will keep him out of the cockpit of an aircraft. Even after the February 2022 crash, the defendant was observed by law enforcement flying aircraft and passengers at multiple locations around Alaska. A 36-month sentence is the only way to reasonably ensure the defendant will not put anyone else at risk.

**5. Avoidance of unwarranted disparities**

This is an exceptional case. Of the other defendants who share the defendant's offense level and criminal history category, the Court can be reasonably certain that none have 11 prior convictions for the same conduct. The defendant repeated violations set him

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR          Page 11 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 11 of 12

apart from any comparison. Moreover, his decades-long campaign of lawlessness is somewhat unique. For those reasons, a 36-month sentence does not represent an unwarranted disparity.

## CONCLUSION

Considering the sentencing factors set forth in 18 U.S.C. § 3553(a), particularly those set forth above, the United States is requesting a sentence of 36 months followed by a one-year term of supervised release, which is sufficient, but not greater than necessary, to achieve the goals of sentencing for this defendant.

RESPECTFULLY SUBMITTED July 31, 2024 at Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ *Seth Brickey*
SETH BRICKEY
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2024 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *Seth Brickey*

*U.S. v. Roberts*
3:23-cr-00039-TMB-KFR          Page 12 of 12
Case 3:23-cr-00039-TMB-KFR   Document 88   Filed 07/31/24   Page 12 of 12