Jamie McGrady
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jamie_mcgrady@fd.org

*Counsel for Defendant Michael Anthony Roberts*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL ANTHONY ROBERTS,<br><br>　　　　　Defendant. | Case No. 3:23-cr-00039-TMB-KFR<br><br>**SENTENCING MEMORANDUM** |

Michael Anthony Roberts, through counsel, Jamie McGrady, Federal Defender, submits this sentencing memorandum in anticipation of the sentencing scheduled for August 7, 2024, before the Honorable Timothy M. Burgess. Mr. Roberts will request a time-served sentence followed be a period of home confinement in lieu of additional incarceration, as recommended by the presentence report (PSR). A time-served sentence with one year of supervised release is an appropriate disposition in this case and is minimally sufficient to achieve the goals of sentencing. On the date of sentencing, Mr. Roberts will have spent 466 days in pre-trial custody on this case.

## I. GUIDELINE ISSUES

Mr. Roberts objects to the application of the 8-point enhancement at paragraph 18 of the PSR. The PSR proposes an eight (8) level increase to Mr. Roberts' Base Offense Level of six (6), pursuant to Section 2B1.1(b)(11) of the United States Sentencing Guidelines, which provides that such an increase is appropriate if the offense involved a conscious and reckless risk of death or serious bodily injury. This offense did not involve the conscious or reckless risk of death or serious bodily injury, and the 8-point enhancement should not apply. Without the enhancement, Mr. Roberts' guideline would be 2-8 months, so the enhancement increases the guideline by 19 months.

Neither U.S.S.G. § 2B1.1(b)(16) itself nor any application note to that provision of the Guidelines defines the term "conscious or reckless risk." Courts are divided on how to interpret the meaning of the terms-and specifically, the meaning of "reckless"-in this enhancement. Several courts (First, Second, Ninth, and Tenth Circuits) "have interpreted 'reckless' as synonymous with 'negligent' by holding that this enhancement can be applied even if the defendant was not consciously aware of the risk created by his criminal conduct, but that a reasonable person should have been aware of it." Federal Sentencing Guidelines Handbook, Pg. 511. Two courts of appeals—the Seventh and Eighth Circuits—have ruled to the contrary. *See United States v. McCord, Inc.*, 143 F.3d 1095, 1098 (8th Cir. 1998); *United States v. Mohsin*, 904 F.3d 580, 586 (7th Cir. 2018). Those courts have interpreted 2B1.1(b)(16)(A) to require actual, subjective awareness of a risk for the enhancement to apply.

The Ninth Circuit applied the objective, "should have known" standard in *U.S. v. Johansson*, 249 F.3d 848(9th Cir. 2001). But *Johansson* is not a prosecution under 49 U.S.C. § 46306(b)(7). Instead, at issue on appeal was the district court's imposition of (what is now) 2B1.1(B)(16) for a conviction of a conspiracy to violate federal regulations which limit the number of hours motor carriers may drive through falsifying records maintained by the Department of Transportation.

In *Johansson*, the Ninth Circuit upheld the district court's finding that the enhancement applied. The court noted "[i]n this case the district court was extraordinarily careful in making sentencing findings. At the initial sentencing hearing it refused to apply the enhancement based only on the government's written submission and continued the hearing to give the parties an opportunity to further develop the evidence. It … heard live testimony from five different witnesses, called by both parties. Johansson submitted no fewer than three sentencing memoranda, and at the conclusion of the evidence each side had the opportunity, once again, to argue. This procedure is entirely consistent with the process envisioned by U.S.S.G. § 6A1.3." *Id*. at 857.

But *Johansson* is distinguishable, because it seemed to define reckless conduct as encompassing negligence. The decision implies that ignorance of a risk would somehow defeat a finding of recklessness. *United States v. Johansson*, 249 F.3d 848, 859 (9th Cir. 2001) ("We do not believe that a defendant can escape the application of the serious risk of injury enhancement by claiming that he was not aware that his conduct created a serious

risk, that is, a defendant does not have to subjectively know that his conduct created the risk."). Id. At 859.

*Johansson* was decided before the Supreme Court's decisions in *Leocal* and *Borden*, which held that simple reckless conduct was not sufficiently serious to qualify as a crime of violence involving use of force against the person of another. Even though those cases are construing crime of violence, which has its own usage and meaning, both Guidelines are similar in that they focus on conduct that is especially egregious.

*United States v. Begay* provides instructive language, where the court carefully distinguished between ordinary "simple" recklessness and "depraved heart" recklessness:

> Our case law recognizes that there are varying degrees of recklessness. For example, we have frequently described the concept of "depraved heart" as the functional equivalent of "reckless and wanton, and a gross deviation from the reasonable standard of care," *Pineda-Doval*, 614 F.3d at 1038, and we distinguish reckless conduct that amounts to a depraved heart from conduct involving "simple recklessness," *Id.* at 1040. In *Pineda-Doval*, we explained that a "district court's finding of recklessness is not equivalent to a finding of malice aforethought" and "second-degree murder require[s] a finding of extreme recklessness evincing *disregard for human life*, not simple recklessness."[8] *Id.* *1094 (emphasis added); *see also United States v. Esparza-Herrera*, 557 F.3d 1019, 1024 (9th Cir. 2009) (*per curiam*) (concluding that Arizona's aggravated assault statute "is broader than the Model Penal Code's definition of aggravated assault because the Arizona statute alone encompasses acts done with *ordinary recklessness*" (emphasis added)). "The difference between th[e] recklessness [that] displays depravity and such extreme and wanton disregard for human life as to constitute 'malice' and th[e] recklessness that amounts only to manslaughter lies in the quality of awareness of the risk." *United States v. Lesina*, 833 F.2d 156, 159 (9th Cir. 1987) (quoting *United States v. Dixon*, 419 F.2d 288, 292–93 (D.C. Cir. 1969) (Leventhal, J., concurring)).

*United States v. Begay*, 33 F.4th 1081, 1093–94 (9th Cir.), *cert. denied,* 143 S. Ct. 340, 214 L. Ed. 2d 153 (2022).

The narrow reading of the enhancement ignores the defendant's *mens rea* and substitutes what amounts to a civil, tort-like standard for recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 836-837 (1994) ("[C]ivil law generally calls a person reckless who acts or fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." (citations omitted).

The more appropriate standard is the one adopted by the Seventh and Eighth Circuits, which applies the "normal meaning of reckless in criminal law." *McCord*, 143 F.3d at 1098; *Mohsin*, 904 F.3d at 586. Under that standard, the government must show that the defendant "disregarded a risk of harm of which he [was] aware." *McCord*, 143 F.3d at 1098; *see also Voisine v. United States*, 579 U.S. 686, 694, 699 (2016) (describing reckless conduct as "acts undertaken with awareness of their substantial risk of causing injury" and "with conscious disregard of a substantial risk of harm"). This subjective standard also conforms more closely to the definition of "reckless" in other parts of the Guidelines. *See* U.S.S.G. § 2A1.4 (in the context of involuntary manslaughter, defining reckless as "situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross

deviation from the standard of care that a reasonable person would exercise in such a situation.").

The government cannot show, by a preponderance of the evidence, that Mr. Roberts' conduct involved "the conscious or reckless risk of seriously bodily injury or death" under either standard. Mr. Roberts has been flying airplanes for decades. The plane barely left the ground before Roberts was aware of a mechanical issue and aborted the takeoff. Granted, he was not properly licensed to fly at the time period covered by the indictment, but his failure to be licensed does not reflect an inability to fly an airplane in a safe manner.

The cases where this enhancement has been applied stand in stark contrast to Mr. Roberts' actions. The enhancement appears to be most often applied in the context of healthcare-related crimes. For example, the enhancement was applied where the defendant oversaw a pharmacy that had produced contaminated drugs that killed dozens of people and sickened hundreds. *United States v. Chin*, 41 F.4th 16 (1st Cir. 2022) The enhancement was also applied where the defendant posed as a psychiatrist, treated patients who suffered from mental illness, and prescribed them controlled substances for years, without any medical training or credentials. *See United States v. Redman*, 887 F.3d 789, 790-91(7th Cir. 2018); *see also United States v. Laughlin*, 26 F.3d 1523, 1530-31(10th Cir. 1994)(holding that fraudulent medical billing scheme that resulted in unnecessary surgical procedure involved conscious or reckless risk of serious bodily injury); *United States v. Jimenez*, 41 Fed. Appx. 1, 4 (7th Cir. 2002) (defendant, a podiatrist, recklessly created serious risk of

bodily injury through "excessive and unnecessary prescriptions for highly addictive pain medications").

The enhancement has also been applied in cases where the defendants engaged in staged car accidents as part of fraud schemes. *See, e.g. Lucien*, 347 F.3d at 49, 55-57; *United States v. Sosa-Baladron*, 800 Fed Appx. 313, 329-31 (6th Cir. 2020). In those cases, the defendants intentionally crashed their cars into other vehicles, or ran their cars off the road or into trees or bushes. *Lucien*, 347 F.3d at 49; *Sosa-Baladron*, 800 Fed. Appx. 330. Finally, in a case from the Sixth Circuit, the enhancement was applied where the defendant, when confronted by police at his home, attempted to burn evidence of his "elaborate scheme of deceased victims and then stealing their identities and savings." *United States v. Jackson*, 858 Fed. Appx. 802, 802-804, 810 (6th Cir. 2021). In doing so, the defendant filled his house with smoke and instructed his girlfriend and her young children not to leave the house, even though they were having trouble breathing from the smoke the defendant had created. *Id*., at 803.

The difference between the actions taken by these individuals and Mr. Roberts' conduct is one of kind, not degree. Mr. Roberts is an experienced pilot with decades of safe flying under his belt, and enough experience to know when a mechanical issue arose to abort the flight. He did not consciously or recklessly put anyone at risk of serious bodily injury or death when he departed by himself in his aircraft.

An 8-point enhancement that more than doubles the guideline was also not envisioned by either party prior to the publication of the presentence report in this case. For all of these reasons, the Court should decline to find the enhancement.

## II. NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Roberts has been convicted of Serving as an Airman without a Pilot Certificate and Displaying False or Misleading Marks about the Registration of an Aircraft. While Mr. Roberts did not have a valid airman's certificate, he absolutely knew how to fly airplanes, and he is a skilled pilot. This is not the case of someone with no training taking an airplane for a joy ride. Although Mr. Roberts has not held a valid pilot's license in several years, he has been flying in remote areas of Alaska for decades.

## III. HISTORY AND CHARACTERISTICS OF MR. ROBERTS

While Mr. Roberts does have a substantial criminal history dating back decades, he has not been arrested or charged with any crime since his release from prison in 2016. Mr. Roberts is now 62 years old and has several health issues that have not been adequately addressed by the Alaska Department of Corrections or the United States Marshal Service.[1] Mr. Roberts has been incarcerated at ACC since May 3, 2023, on his current charges. Mr. Roberts has many medical issues including severe left lower extremity edema, a recent hip replacement, and constant pain in his legs and knees from previous accidents. He suffers

---

[1] DOC medical records will be provided to USPO prior to sentencing for inclusion in the final presentence report.

from chronic joint pain. He has a history of hypertension and high blood pressure. The edema requires constant leg elevation, compression socks, and medications. He has filled out multiple cop-outs but has been denied an ADA cell, a medical mattress, and medical shoes.

In October of 2023 after complaining of chest pains for several days, Mr. Roberts was taken to the emergency room and was found to have DVT. They also found a 7mm lung nodule in his right middle lobe. The hospital suggested that Roberts receive another CT scan in one year. Roberts has continued to complain about right upper quadrant chest pains but has been denied another CT scan of the chest.

In March of 2024, Mr. Roberts began to develop an extensive rash on his arms, torso, and legs. They have determined it to be urticaria, cause unknown. These reactions may be due to current medications. Urticaria is not improving even with steroids and antihistamines. Additional lab requests have been denied. Mr. Roberts was seen at Alaska Regional Hospital in April of 2024 for a gallbladder ultrasound. They did see signs indicative of intrinsic liver disease, as well as continued chronic thrombosis in the left femoral vein.

The Department of Corrections has requested referrals to see a gastroenterologist, as well as a rheumatologist. They suspect possible urticaria vasculitis. He has had a severe a rash over his entire body for months and abdominal pain. The Department of Corrections' medical personnel report that they have been waiting for approval from the U.S. Marshals Service for months (updated as of 7/23/24). According to DOC medical records dated June

28, 2024, Mr. Roberts has a chronic blood clot in his left femoral vein. The DOC medical personnel are concerned about clots breaking loose which can cause stroke, heart attacks, and/or death.

Mr. Roberts is unwell. His health condition is not predicted to improve, and his medical needs have not been adequately addressed during the period of his incarceration.

## IV. SERIOUSNESS OF THE OFFENSE, JUST PUNISHMENT, DETERRENCE

A further sentence of imprisonment is not necessary to achieve the goals of specific or general deterrence. As to specific deterrence, Mr. Roberts has been deterred. His health has deteriorated, he has lost many of his personal possessions, including a $160,000 airplane and he has served 466 days in a pre-sentence facility with no programming or outdoor air. In terms of general deterrence, this case is a one-off in terms of federal prosecutions. In twelve years at the Federal Defender's office, counsel for the defendant was unable to identify any other cases prosecuted in this District under these United States Code provisions. That Roberts was federally prosecuted for flying without a license and spent any amount of time in prison will serve as a deterrent to other unlicensed pilots.

**CONCLUSION**

For all of the above reasons, a time served sentence followed by a period of home incarceration in lieu of additional jail time is an appropriate disposition in this case, given Mr. Roberts failing health, his advanced age, and the circumstances in this case.

DATED at Anchorage, Alaska this 31st day of July, 2024.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Jamie McGrady*
Jamie McGrady
Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on July 31, 2024. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jamie McGrady*